## Marie Hughes, Administratrix, Appellee, v. Eldorado Coal & Mining Company, Appellant.

### (Not to be reported in full.)

Appeal from the Circuit Court of Saline county; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the March term, 1915. Reversed and remanded. Opinion filed December 1, 1915.

### Statement of the Case.

Action by Marie Hughes, administratrix of the estate of James Hughes, plaintiff, against the Eldorado Coal & Mining Company, in the Circuit Court of Saline county, to recover for injuries resulting in the death of plaintiff's intestate, which injuries were sustained as a result of an explosion in defendant's mine where deceased was employed as a shot firer. From a judgment for plaintiff for $2,500, defendant appeals. Deceased left a widow who prosecuted this action as administratrix for the benefit of the next of kin.

The first count charged that the third and fourth entries were dry and dusty and that the defendant wilfully failed and neglected to have the entries and

roadways thoroughly sprinkled or cleaned, by reason of which and while Hughes was following his duty, and while the air in the entry and crosscut was so charged with dust, and by reason of the firing of the shots the dust became ignited, causing a violent explosion in the entries and crosscut, injuring the deceased Hughes.

The second count charged that defendant wilfully failed and neglected to conduct into the working place of Hughes an amount of air sufficient to render the working place reasonably free from deleterious air, etc., and that the air being charged with gas and dust became ignited causing a violent explosion, injuring deceased.

The fifth count charged that it was the duty of the defendant to use reasonable care to furnish a reasonably safe place in which to work and that the entries and crosscuts were in a dangerous condition, in that there had been a squeeze in the mine and the air passages partially closed to such an extent that sufficient quantities of fresh air could not be forced through the passages to prevent the air in the third and fourth entries and crosscuts from becoming deleterious. Also that the blast from the shots caused the gas, dust and other inflammable substances with which the air in the entries and crosscuts was charged and of which defendant had knowledge, to become ignited causing a violent explosion, injuring Hughes.

The original declaration then concluded with profert of letters of administration, etc.

The sixth or additional count was filed within one year of the time of the injury, and charged a storage of one hundred pounds of powder in the fourth west entry, and that the fire from the shots caused the powder to become ignited and to explode, injuring the deceased Hughes. This count then averred death, survivorship, and concluded with damages to the amount of $3,000, and made profert of letters of administra-

tion, and then followed this averment: Plaintiff further avers that the said defendant had elected not to be bound by an Act of the General Assembly of the State of Illinois, commonly known as the Compensation Act, and that the plaintiff's intestate was bound by the terms of said act.

It appeared that James Hughes and his buddy, John Dunn, were employed by defendant as shot firers in its mine, and while so engaged on November 25, 1913, an explosion occurred by which the said James Hughes and John Dunn received fatal injuries. The explosion occurred in the third and fourth west entries off of the second north entry in the mine. The entries are the first and second north extending north and south, and the first, second, third and fourth west entries, which are turned to the west off of the second north. The north entries extended some distance north of the third and fourth west entries. Air was circulated by a fan, producing a downcast of air, passing into the first north entry and after going some distance beyond the fourth west it was returned through the second north to the fourth west entry, and thence west through the fourth west entry and at the end of this returned by the third west to the second north and thence south to the second west entry, thence west, returning by the first west to the second north entry, and thence passing into the shaft. There was evidence tending to show that a squeeze in the first and second west entries causing the top to fall and to some extent to stop up these entries so that the passage for the air in returning to the shaft was very much smaller in these entries than in the third and fourth entries. Room No. 9 was located about two-thirds of the distance west on the fourth west entry and north of the second north entry. Ten shots had been placed in these entries to be fired by Hughes and Dunn. Room No. 9 had two shots placed in it. There was one shot in the face of the fourth west entry, one in the cross-

cut being opened near the face of that entry, two in the face of the third west entry and two in each of the two stub entries off the third west and opposite the crosscut marked 12 on the plat. On the afternoon of the 25th of November, Hughes and Dunn went into these entries and fired the shots located and while being fired an explosion occurred injuring both these shot firers. It was disputed where the shot firers commenced firing. It was claimed by plaintiff that the evidence showed they commenced firing in the third west entry, and by defendant that they commenced in the fourth west entry and fired with the air current, and defendant contended that the evidence showed that the cause of Hughes' death was firing his shots in too rapid succession and with the air, carrying the powder smoke or carbon monoxid from one shot to the other, resulting in an explosion, and claimed to be sustained by the fact that a portion of the skin of a burned hand, a portion of a little finger, cap, lamp and other things were found in the third west entry. It was contended by plaintiff that the roadway in these entries was very dusty, and that the circulation of air being very poor, the dust mingled with the powder smoke and firing the shots in succession, the standing powder smoke combined with the dust ignited and produced the fatal effect; and also claimed that there was evidence of charred dust upon the roof and props of the entry and that the dust had been burned and coked and stuck to the timbers and roof of the entry, and that the dust in the air was one of the causes of the explosion.

Hughes and Dunn were found in the fourth west entry and at the distance of about forty feet from the second north entry.

Defendant pleaded the statute of limitations to the first, second and fifth counts, and plaintiff's demurrer to the plea was sustained. The cause was tried by jury. At the conclusion of plaintiff's evidence, the court excluded the evidence and directed a verdict as

to the third, fourth and sixth counts, but refused the motion as to the first, second and fifth counts. The motion was renewed at the close of all the evidence and again refused. After verdict plaintiff was permitted to amend by inserting in each count the allegation that defendant had elected not to be bound by the act commonly known as the Compensation Act. The jury found for plaintiff.

WILLIAM E. WHEELER and WHITLEY & COMBE, for appellant.

SOMERS & MILEY and HARTWELL & WHITE, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

## Abstract of the Decision.

1. WORKMEN'S COMPENSATION ACT, § 12*—*when not necessary to allege in all counts that employer had elected not to come under Compensation Act.* In an action at common law to recover for personal injuries resulting in the death of plaintiff's intestate, a miner, sustained since the enactment of the Workmen's Compensation Act of 1913, a general averment in one of several counts that the employer had elected not to provide and pay compensation as provided by the statute is sufficient although other counts contain no such averment, such averment being of a general character not peculiar to any count but pertaining to all counts.

2. DEATH, § 36*—*when not necessary to allege in all counts that deceased left next of kin.* Although it is usual in practice in actions to recover for death to aver in all counts of the declaration that deceased left next of kin, it is not necessary to do so, and the statutory requirement is met if such allegation appear in one count.

3. LIMITATION OF ACTIONS, § 69*—*when use of additional counts alleging survivorship does not constitute new cause of action.* In an action to recover for death, where the declaration contains but one count which alleges that deceased left next of kin, additional counts or an amended declaration averring survivorship in each count is

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

not the statement of a new cause of action, but a restatement in amplified form of the original cause of action.

4. PLEADING, § 56*—*when count preserved as part of declaration after direction of verdict.* Where the evidence as to a count is stricken and a verdict directed as to the count, the count is not thereby stricken but remains part of the declaration for reference purposes and may furnish a sufficient basis for additional counts setting forth the cause of action in a manner more accurate and legal than in the disapproved count.

5. WORKMEN'S COMPENSATION ACT, § 12*—*when declaration in action for death sufficient.* In an action at common law to recover for injuries resulting in the death of plaintiff's intestate, a miner, sustained since the enactment of the Workmen's Compensation Act of 1913, where the employer elected not to provide and pay compensation as provided by the statute, declaration examined and *held* as a whole to state a complete cause of action.

6. WORKMEN'S COMPENSATION ACT, § 12*—*when declaration sustained by one good count.* In an action at common law to recover for injuries resulting in the death of plaintiff's intestate, a miner, sustained since the enactment of the Workmen's Compensation Act of 1913, where defendant pleaded the statute of limitations to three counts not alleging that the employer had elected not to provide and pay compensation as provided by the statute, a demurrer to the plea *held* not erroneously sustained where a count to which the statute was not pleaded sufficiently alleged such election.

7. WORKMEN'S COMPENSATION ACT—*what is liability of employer under act.* An employer operating under the Workmen's Compensation Act is liable for all injuries sustained by his employees acting within the scope of their employment, regardless of questions of negligence, proximate cause or accident.

8. WORKMEN'S COMPENSATION ACT, § 2*—*when presumed that employer decided not to come under Workmen's Compensation Act.* In an action at common law to recover for personal injuries sustained by an employee since the enactment of the Workmen's Compensation Act of 1913, it will be assumed as a fact that defendant had elected not to pay compensation in accordance with the act, where counsel conceded in argument that defendant was not operating under the act at the time of the injury and never had been so operating, although there was no evidence of such fact.

9. WORKMEN'S COMPENSATION ACT, § 2*—*when action of counsel constitutes declaration that employer not operating under statute.* In an action at common law to recover for injuries resulting in the death of plaintiff's intestate, a miner, sustained since the enactment of the Workmen's Compensation Act of 1913, the action of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

counsel for defendant in offering evidence tending to show that negligence of defendant was not the proximate cause of the injury sought to be recovered for is equivalent to a declaration that defendant was not operating under the statute.

10. TRIAL, § 34*—*when courts reluctant to sustain objections.* Courts are reluctant to sustain objections where a party has lost no rights by reason of the matters objected to and where nothing is to be gained by sustaining the objections.

11. EVIDENCE, § 206*—*what constitutes a declaration against interest of deceased person.* In an action to recover for personal injuries resulting in the death of plaintiff's intestate, a miner, since the enactment of the Workmen's Compensation Act of 1913, where the employer elected not to provide and pay compensation as provided by the act, and where plaintiff's injuries were the result of an explosion occurring immediately after deceased fired certain shots, and where defendant's theory of the accident was that the shots were fired with the air, causing the powder smoke or carbon monoxid to be carried from one shot to another, causing the explosion, a statement of deceased's buddy tending to confirm defendant's theory is a statement against the interest of the declarant, it appearing that declarant was injured by the same explosion.

12. EVIDENCE, § 205*—*when declarations of deceased person admissible.* Declarations made by a deceased person against his interest are competent.

13. EVIDENCE, § 143*—*what constitutes secondary evidence.* Declarations made by a deceased person against his interest, when competent, are secondary evidence.

14. EVIDENCE, § 206*—*what constitute declarations by deceased person against interest.* Declarations by a deceased person against his interest constitute a class of evidence embracing not only entries in books but all other declarations or statements of fact, verbal or written, whether made at the time of the fact declared or at a subsequent date.

15. EVIDENCE, § 205*—*when declarations of deceased person competent.* In order to render the declarations of a deceased person competent it must appear that the declarant is dead, and that while alive he possessed competent knowledge of the facts or that it was his duty to have such knowledge, and that the declarations sought to be proved were at variance with his interest.

16. EVIDENCE, § 464*—*how weight and value of declarations against interest of deceased person determined.* The weight and value as evidence of declarations of a deceased person against his interest is to be determined by other evidence in the case.

17. EVIDENCE, § 204*—*when declarations against interest of deceased person competent.* Declarations by a deceased person against

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

his interest are competent to prove collateral or independent facts embodied in such declarations.

18.  EVIDENCE, § 204*—*when declarations against interest of deceased person competent.*  Declarations by a deceased person against his interest are competent in a suit between strangers.

19.  EVIDENCE, § 177*—*competency of declarations by third party.*  Declarations by a third party are not generally competent.

20.  EVIDENCE, § 204*—*when declarations of deceased person competent.*  In an action at common law to recover for injuries resulting in the death of plaintiff's intestate, a miner, sustained since the enactment of the Workmen's Compensation Act of 1913, where the employer elected not to provide and pay compensation as provided by the statute, and where defendant's theory of the explosion causing the injuries was that deceased fired shots in the air, causing the powder smoke or carbon monoxid to be carried from one shot to another, resulting in the explosion, the exclusion of a declaration by deceased's buddy, also injured by the explosion, tending to confirm defendant's theory *held* erroneous, it appearing that the declarant was dead, and that the statement was against interest.

21.  INSTRUCTIONS, § 28*—*when giving of erroneous oral instruction not cured.*  An erroneous oral instruction involving the statement of the opinion of the trial judge as to the sufficiency of the evidence to prove a contested fact is not cured by directing the jury to disregard such instruction.

22.  INSTRUCTIONS, § 28*—*when no right to instruct orally.*  An oral instruction to a jury is in violation of section 73 of the Practice Act (J. & A. ¶ 8610), providing that no judge shall instruct the jury in a civil or criminal case unless such instructions are reduced to writing.

23.  APPEAL AND ERROR, § 590*—*when exception to instruction timely as basis for error.*  An assignment of error in instructions is warranted where the exception to the instruction objected to as erroneous was taken immediately after the instruction was given.

24.  INSTRUCTIONS, § 71*—*when instruction assuming disputed facts erroneous.*  In an action at common law to recover for personal injuries resulting in the death of plaintiff's intestate, a miner, sustained since the enactment of the Workmen's Compensation Act of 1913, where the employer elected not to provide and pay compensation as provided by the statute, such injuries being caused by an explosion in defendant's mine where deceased was employed as a shot firer, an instruction assuming that a dangerous condition existed in the mine at the time of the accident *held* erroneous where the facts assumed were contested, and where an erroneous oral instruction had previously been given on the same count.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

25. MINES AND MINERALS, § 191*—*when instruction as to duty of operator to sprinkle and clean roadways erroneous as being too broad.* In an action to recover for injuries sustained resulting in the death of plaintiff's intestate, a miner, since the enactment of the Workmen's Compensation Act of 1913, where the employer had elected not to provide and pay compensation as provided by the statute, where two counts in the declaration alleged "that the defendant wilfully failed and neglected to have the entries and roadways thoroughly sprinkled or cleaned," an instruction to find defendant guilty if the jury found that defendant committed the wilful violation charged in such counts, *held* erroneous as being broader than clause m of section 14 of the Miners' Act (J. & A. ¶ 7488), providing that "the operator of such mine must have such roadways regularly and thoroughly sprayed, sprinkled or cleaned."

26. MINES AND MINERALS, § 41*—*what constitutes wilfulness within Mining Act.* To constitute wilfulness within the meaning of the Miners' Act (J. & A. ¶ 7475 *et seq.*), the act charged to be wilful must be an act prohibited by the statute.

27. APPEAL AND ERROR, § 1391*—*when evidence not discussed.* Where a judgment is reversed for errors of law, the Appellate Court is not warranted in expressing views on the evidence.