**Thomas Humphrey, Plaintiff-Appellee, v. Clifford C. Terry et al., Partners, Doing Business as Big Four Welding Company, Defendants-Appellants.**

Term No. 55–F–5.

Fourth District.

May 4, 1955.

Released for publication May 26, 1955.

Kern & Pearce, of Carmi, for appellants.

Leonard J. Dunn, of West Frankfort, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

This is an appeal from a judgment on a verdict for $10,000 in favor of plaintiff for injuries caused by falling steel plates on a truck being unloaded.

The plaintiff, Thomas Humphrey, was an assistant driver or helper on a truck operated by a motor freight transport company, which is not a party to this suit. At the time, the truck was delivering a quantity of steel to a yard in Carmi operated by defendants. Upon arrival at the yard, it was found that the steel to be there delivered was under six other heavy steel plates, intended for delivery at another city. It became necessary to move these six plates, each weighing about 1,000 pounds, in order to unload the consignment to defendants.

It was plaintiff's theory that he was inexperienced in handling steel plates, and had no duty in connection with unloading, that this was the duty of defendants'

employees, but they called upon plaintiff, as a bystander, to lend a hand, representing that they were experienced in handling steel and that he was in no danger; that when he did lend his assistance, the defendants' employees negligently caused the steel plates to fall upon plaintiff with resulting severe injuries.

Defendants deny that plaintiff had no duty to perform in unloading the steel, and deny any representations to him as to their experience, or his safety. Regardless of that, their position on this appeal is that the evidence establishes contributory negligence on the part of plaintiff, that plaintiff voluntarily put himself in a place of danger, while fully aware thereof, and that by reason of his knowledge of the danger, his own negligence cannot be excused by reliance on representations made to him. It is further contended that plaintiff has no common-law right of action, his only remedy being under the Workmen's Compensation Act.

According to evidence for the plaintiff, the truck driver suggested that the six plates on top be removed by a winch and placed on the ground, but defendants' foreman said this was unnecessary, they would simply stand the plates up on edge at the side of the truck, and thus get at the material underneath, he said he was experienced and knew how to handle the steel.

A winch truck was brought alongside and the steel plates were up-ended, then a chain was stretched from the other side of the truck, over the top of the plates and down on the outside of the truck, but was not fastened to the plates, and this did not prevent them from tipping over. With the plates standing on edge, the crew called to plaintiff to come and help steady them. As he came to the end of the truck he called attention to the fact that the steel plates were still resting on part of the other steel, and also expressed doubt that the chain would hold. He said he did not think the

44

steel would stay up when they tried to pull the other from under it.

Plaintiff's evidence further indicates that, while the bottom edges of the plates were close together, the top edges fanned out. To his remarks, the foreman replied in substance: "Don't worry, we know what we are doing—we have handled more steel than you ever have or ever will." The men assured him the chain would hold. The plaintiff then did as he was told, getting on the truck at the rear end and steadying the steel. The other men then got off, apparently to get the winch in position to unload the other steel, leaving the plaintiff alone on the truck. Thereupon, the steel plates fanned out farther and fell over catching plaintiff under their weight.

Much of the foregoing is contradicted by defense witnesses, and there was also defense testimony that the truck was moved before the steel fell.

■ The defendants' legal point that plaintiff cannot recover unless he exercised ordinary care for his own safety, is, of course, correct. But the next point is that a person having knowledge of a dangerous condition cannot rely upon a presumption that the place is safe. The cases cited refer to a person driving into a dangerous place obscured by smoke or steam, while aware danger is likely to be encountered.

In our opinion these cases are not in point. This plaintiff was not experienced in the operation at hand; he expressed doubt that it was done safely, but he was with men apparently experienced in the handling of steel, they assured him of their superior knowledge, which was believable, and he then relied upon their assurances that there was no danger to him. The plaintiff cites the following rule: "It cannot be considered reckless in men who are in doubt upon a matter which cannot be determined absolutely, to pay some regard

to the opinions and assurances of those who are supposed to have, and by their positions are bound to have, special knowledge called for by their responsibilities." 38 Am. Jur. 867.

The foregoing rule is correctly applied under the facts, for this was not a situation in which all reasonable men would know positively of the danger, such as in the case of driving blindly into danger obscured by smoke. Indeed, it is reasonable to suppose that defendants' employees were sincere in their representations, and that they were not intentionally deceiving plaintiff.

Defendants cite a number of cases purporting to hold that one may not rely upon statements of others. These cases involve different situations. For example, Bender v. William Cooper & Nephews, Inc., 323 Ill. App. 96, involved a plaintiff who relied upon a word on the label of a bottle of disinfectant, but the court held the label contained adequate information, and that plaintiff was not entitled to rely on a small part and ignore the rest.

Some of the other cited cases concerned instructions. Thus, Chicago Consol. Bottling Co. v. Mitton, 41 Ill. App. 154, involved an instruction that if plaintiff was injured because he relied upon assurances of the defendant, he was entitled to recover. This was held bad because it took from the jury any question as to plaintiff's contributory negligence. Similarly, in Bulman Furniture Co. v. Schmuck, 175 Ark. 442, 299 S. W. 765, it was held error to instruct a jury as a matter of law that a plaintiff who relied upon statements of defendants was not guilty of contributory negligence.

 Without attempting to analyze all the citations, it is apparent that the effect of reliance upon assurances and representations, such as this case involves, presents the normal question for a jury, whether the

46

plaintiff was acting as a reasonable and prudent man, in the exercise of due care on his part.

 To take the case from the jury, we must be able to say that all reasonable and unbiased men, acting within the limits prescribed by law, would agree that plaintiff was not in the exercise of due care and caution for his own safety, and that as a result, his act was the proximate or contributing cause of the accident. Wohlwend v. Fosse, 345 Ill. App. 434, 103 N.E.2d 669, 671. We are unable to make such a finding in this case, for the jury could properly find that plaintiff, though doubtful, could not know definitely of the danger, and was acting reasonably in accepting the advice of persons with superior knowledge.

Defendants' final point is that the plaintiff was in the position of a loaned employee, and that the borrowing employer was under the Compensation Act, so that plaintiff's remedy is under that statute. This is a possibility. However, we have examined the pleadings and proof with this result: The original reply of plaintiff contained an allegation that, at the time of the occurrence, he was the servant of defendants. To this, defendants filed a rejoinder which, among other things, asserted that the Workmen's Compensation Act applied.

 Prior to trial, the plaintiff filed an amended reply by leave of court, in which the aforesaid allegation was deleted. Apparently no corresponding change was made by amendment to the rejoinder, but the abstract is void of any further reference to the point. It was not presented to the trial court by motion, nor otherwise asserted in the trial. The trial was contested on the question of negligence and contributory negligence. The post-trial motions make no reference to the point; on the contrary, both the motion for new trial and the motion for judgment n. o. v. assert that

47

the evidence discloses contributory negligence, which is not a defense in compensation cases.

There is no evidence that the defendants are under the Compensation Act, nor any description of the nature of their business, except for the delivery of steel above described. Thus it conclusively appears that the case was tried on common-law principles in the court below, with a shift to a different approach on appeal. No ruling of the trial court was obtained on this point, which would now be subject to review, and, as the case was there presented, it was a forum of appropriate jurisdiction.

Under these conditions, we adhere to the prior decision of this court on the same point: "We believe that it would be unjust and unreasonable to permit a defendant to take advantage of all defenses that are permissible under a common-law action and then allow him after these issues had been found adversely, to say that the suit had been brought in the wrong forum and that no liability existed at common law, or under the statute, except under the Compensation Act, where the court had jurisdiction of the subject-matter as the suit was tried." Morris v. Taylor Coal Co., 206 Ill. App. 100, 103.

In conclusion, it is held that the evidence required submission of the case to the jury, the verdict is not contrary to the manifest weight of the evidence, and there is no reversible error in the rulings of the trial court; the judgment is affirmed.

Judgment affirmed.

CULBERTSON, P. J. and BARDENS, J., concur.